IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 18-cr-253 (BAH) |
| : | |
| MANUEL REYNOSO : | |
| : | |
| Defendant. : | |
| : | |

**MOTION TO SUPPRESS TANGIBLE EVIDENCE AND INCORPORATED
MEMORANDUM OF POINTS AND AUTHORITIES**

NOW COMES, the Defendant, MANUEL REYNOSO, by and through his counsel, Brian K. McDaniel and The McDaniel Law Group, PLLC, respectfully requesting that this Court suppress all physical evidence seized in violation of the Fourth Amendment as a result of the execution of a warrantless vehicular search which occurred on May 16, 2018 at approximately 1:19 am in the morning, at the location of 200 17th Street N.W. Washington, D.C..

Such evidence includes, but is not limited to a Glock 27, .40 caliber seim-automatic pistol and a "Large Capacity Ammunition Feeding Device".  The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Warrantless searches, such as the one Mr. Reynoso was subject to, are presumptively unreasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967). The burden lies with the government to show sufficient basis for the seizure of Mr. Reynoso. *Malcolm v. United States*, 332 A.2d 917, 918 (D.C. 1975).

The grounds for this motion are more fully stated in the accompanying memorandum of law. Mr. Reynoso requests an evidentiary hearing on this motion.

                Respectfully Submitted,


                /s/Brian K. McDaniel_____
                Brian K. McDaniel, Esq.
                The McDaniel Law Group, PLLC
                1920 L. Street N.W.
                Suite 303
                Washington, D.C. 20036
                Telephone (202) 331 – 0793
                bkmassociates@aol.com


## CERTIFICATE OF SERVICE

    I hereby certify, that on this 21st day of September, 2018 a copy of the foregoing Motion to Suppress Tangible Evidence and it's attending Memorandum of Points and Authorities has been delivered to AUSA Karla-Dee Clark by ECF filing.


                /s/Brian K. McDaniel_____
                Brian K. McDaniel, Esq.

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 18-cr-253 (BAH) |
| : | |
| MANUEL REYNOSO : | |
| : | |
| Defendant. : | |
| : | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    BACKGROUND**

Mr. Reynoso is before the Court charged in a three-count indictment with: 1.) Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One year, in violation of Title 18 U.S.C. § 922(g)(1), and 2.) two separate counts of Simple Possession of a Controlled Substance, in violation of Title 21 U.S.C. §844(a). It is alleged that, in the early morning hours of May 16, 2018, Officers Biel and Agnimel, while operating a marked police cruiser, noticed a black BMW with MD tags 5CD9987 travelling south bound on 17th Street N.W. Washington D.C. without it's lights. After conducting a stop of the vehicle, the officers allege to have smelled an odor consistent with marijuana emanating from the vehicle and that, upon asking the occupants of the vehicle "who had been smoking marijuana?", Mr. Reynoso (the driver of the vehicle) "picked up a marijuana bud from the center console and stated "This is all we have."" At this time, the officers commanded all of the three occupants of the vehicle to alight from their seats, ostensibly so that the officers could search the vehicle for additional marijuana. Indeed the sole reason for having the occupants step out of the vehicle was to conduct a further search for marijuana. It is

further alleged that, once outside the vehicle, and while standing near it's front, Mr. Reynoso took flight running south bound on 17th street and turning on to Constitution Ave. N.W.. During the pursuit of Mr. Reynoso, it is alleged that officer Amaturo, looked into the BMW and saw "in plain view" a loaded pistol magazine in the front passenger door pocket. At this time, the two remaining passengers of the vehicle were arrested for carrying a pistol without a license, Unregistered firearm and other related ammunition charges. It is further alleged that, during the pursuit of Mr. Reynoso, Crime Scene Search Technician Zolton executed a warrantless search of the vehicle which resulted in the recovery of a semi-automatic firearm located underneath the drivers side floor mat.

A.  ARGUMENT

    1.  **All Physical Evidence Obtained from Mr. Reynoso Was Secured In Violation Of His Fourth Amendment Rights and Must Be Suppressed.**

Mr. Reynoso was illegally seized. "Stopping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of the [Fourth] Amendment." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979). In order to justify such a seizure, the officer must have sufficient facts to establish, at a minimum, a reasonable articulable suspicion of unlawful conduct. *Id.* at 663. A search following an unlawful seizure cannot be justified based upon what the search reveals. *Brown v. United States*, 590 A.2d 1008, 1013 (1991) quoting, *United States v. Di Re*, 332 U.S. 581, 595 (1948)).

When Mr. Reynoso was seized in the early morning of May 16, 2018, evidence will show that he was operating the BMW vehicle with the lights properly in use and that he was not committing any other traffic offense a the time of the stop. Law enforcement had no valid legal justification for the initial stop, detention and/or extraction of Mr. Reynoso from the vehicle at issue . As a result of his illegal seizure, police allegedly

obtained tangible evidence. The police seized Mr. Reynoso without reasonable articulable suspicion or probable cause in violation of *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  Terry permits only a very brief detention upon a showing of some reasonable articulable suspicion that a criminal act is being committed. The detention should last no longer than necessary for the legitimate purpose prompted by the stop. *United States v. Sharpe*, 470 U.S. 675 (1985).

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981), the Supreme Court held that, "when police have made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile." Here the arrest is tainted by the initial unlawful stop and seizure of Mr. Reynoso which took place absent the requisite *articulable suspicion* mandated by *Terry*. Once an illegal seizure is established, the Government has the burden of proving that the causal chain was sufficiently attenuated by an independent act to dissipate the taint of the illegality. *United States v. Wood*, 981 F.3d 536 (D.C.Cir. 1992). While it is true that a criminal defendant's voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct. *United States v. Jones*, 374 F.Supp.2d 143 (D.D.C. 2005). Mr. Reynoso's flight in this matter occurred only after the officers stopped him without any legal justification. Any assertion that Mr. Reynoso abandoned the items which were recovered from the vehicle must be viewed through the prism of the illegality of the initial stop of the vehicle.

**2.     Officer Beal Violated the Law of the District of Columbia and as a Result the Tangible Evidence Should Be Suppressed.**

According to 48 D.C. Code Section 921.02a, neither the odor of marijuana, nor the possession of or suspicion of possession of marijuana without evidence of quantity in excess of 1 ounce either individually or in combination, constitute reasonable articulable suspicion of a crime.  The legislative history explains that:

> [t]his section also outlines what circumstances no longer constitute reasonable articulable suspicion of a crime.
>
> The District of Columbia Court of Appeals has repeatedly held that a law enforcement officer who smells marijuana has probable cause to believe that a quantity of marijuana is present.  (footnote omitted).  With this in mind, several witnesses at the hearings on Bill 30-409 suggested that the bill should be amended to clarify that the odor of marijuana, on its own, would not provide an officer with reasonable articulable suspicion of a crime. The committee print adopts this proposal because possessing one ounce or less of marijuana would no longer be a crime. As a result, there would be no basis for believing that a crime has been committed if the only evidence was the smell of marijuana.53  This amendment prevents law enforcement from bootstrapping suspicion that a person is committing the civil infraction of possessing one ounce or less of marijuana into a reason to suspect that the person might be in possession of more than one ounce of marijuana as the justification for a stop and/or search (footnote omitted).
> 53 See *Commonwealth v. Cruz*, 459 Mass. 459 (2011) ("Given our conclusion that [the marijuana decriminalization statute] has changed the status of possessing one ounce or less of marijuana from a crime to a civil violation, without at least some other additional fact to bolster a reasonable suspicion of actual criminal activity, the odor of burnt marijuana alone cannot reasonably provide suspicion of criminal activity ...").
>
> This amendment acknowledges that "continuing to allow stops based on nothing more than odor would change nothing about the community's interaction with law enforcement around the possession of marijuana (footnote omitted).  Notably, this amendment does not require the police to ignore the odor of marijuana (footnote omitted). It merely states than an officer must have additional evidence before reasonably believing an individual has committed a crime.
>
> The committee print was also amended to provide that the following additional factors, individually or in combination with each other, shall not constitute reasonable articulable suspicion of a crime: (the odor of

> marijuana, as described above); the possession of or the suspicion of possession of marijuana without evidence of quantity in excess of one ounce; the possession of multiple containers of marijuana without evidence of quantity in excess of one ounce; and the possession of marijuana without evidence of quantity in excess of one ounce in proximity to any amount of cash or currency (footnote omitted).

Committee on the Judiciary and Public Safety January 15, 2014. Report on Bill 20-409 Pages 10-11).

In this case, the only evidence that Officer Biel possessed when he asked Mr. Reynoso to step out of his vehicle was the odor of marijuana and a small amount of marijuana (noted as a bud). There is no evidence that would support the need for law enforcement to search the vehicle being operated by Mr. Reynoso. Additionally the officers did not put in the Gerstein or testify at the preliminary as to any other evidence which led them to believe that the vehicle possessed more than 1 ounce of marijuana. On the contrary, at the preliminary hearing, Officer Biel testified that the sole reason for the search of the vehicle was for more marijuana. That testimony specifically excludes the possibility that Officer Biel had Mr. Reynoso step out of the vehicle in order to conduct field sobriety tests or to otherwise investigate a possible DUI. Because Officer Biel lacked any other facts upon which to search the vehicle, his search is per se unlawful. For those reasons, the Defense asks the Court to suppress any evidence seized as a result of the subsequent search.

**3.     The Physical Evidence Must Be Suppressed As Fruit of the Unlawful Seizure of Mr. Reynoso.**

The fruit of an unlawful seizure is inadmissible as evidence against the victim of the seizure. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Here, law enforcement without probable cause or reasonable articulable suspicion, illegally seized Mr. Reynoso.

To justify a *Terry* stop, the police must have "reasonable grounds to believe" that "criminal activity may be afoot." *Terry*, 392 U.S. at 27.

Furthermore, "inarticulable hunches" cannot justify Fourth Amendment intrusions *Id.* at 22. Here law enforcement attempts to justify the warrantless search of the vehicle by alleging that a firearm magazine was observed by officers in plain as they looked into the vehicle. Given the position of the at issue magazine, officers could not have determined the nature of the object prior to entering into the vehicle absent the secure of the necessary search warrant. If, however, the Government should contend that the vehicle was searched incident to the arrest of Mr. Reynoso, this to would be an insufficient basis to support the search of the vehicle. "[A] court must first put itself in the officers' position and determine whether the (seized object) was within the arrestee's control when he was arrested. The Court must then consider whether events occurring after the arrest but before the search was unreasonable." *Young v. United States*, 670 A.2d 903, 906 (D.C. 1996).

Consequently, all tangible evidence allegedly obtained following Mr. Reynoso's illegal seizure should be suppressed as fruits of an illegal seizure in violation of the Fourth Amendment. *Id.* at 488.

## **CONCLUSION**

For the reasons set forth above, Defendant Manuel Reynoso, respectfully moves this Court to suppress all tangible evidence obtained as a result of the warrantless search of the BMW vehicle in questions in this matter. Defendant also requests an evidentiary hearing on this motion.

Respectfully Submitted,

/s/Brian K. McDaniel
Brian K. McDaniel, Esq.
The McDaniel Law Group, PLLC
1920 L. Street N.W.
Suite 303
Washington, D.C. 20036
Telephone (202) 331 – 0793
bkmassociates@aol.com