UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 18-253 (BAH) |
| | : | |
| v. | : | |
| | : | |
| MANUEL D. REYNOSO, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
MOTION TO SUPPRESS TANGIBLE EVIDENCE

The United States of America, by and through its attorney, the United States Attorney of the District of Columbia, respectfully submits this Opposition to the defendant's Motion to Suppress Tangible Evidence.   As grounds for this opposition, the United States relies on the following points and authorities, and any other points and authorities that may be cited during a hearing.

I.      FACTUAL BACKGROUND

On May 16, 2018, at approximately 1:20 a.m., police officers of the United States Secret Service wearing police uniforms, were on patrol in a marked police car and observed a BMW with Maryland license tag 5CD9987 (hereinafter "BMW") traveling southbound on 17th Street, N.W., Washington, D.C., without headlights.[1]   A police officer conducted a traffic stop of the BMW near 200 17th Street, N.W., Washington, D.C.   The police officer approached the BMW and spoke with the defendant who was driving the BMW.[2]   While speaking with the defendant, the

---

[1]      The defendant was issued a District of Columbia Notice of Infraction for no lights running.

[2]      The defendant produced a Maryland driver's license to the police officer.   The police officer conducted a records/computer check of the defendant.   It was later learned that the defendant's driver's license was suspended.   It is a lawful part of a traffic stop to run a computer

1

police officer smelled an odor consistent with Marijuana coming from the BMW.    The police officer asked the defendant who was smoking Marijuana in the car.    The defendant replied that no one had been smoking Marijuana in the car, picked up what appeared to be a Marijuana bud from the center console and said, "This is all we have."    Upon information and belief, the police officer decided to have all three individuals in the BMW get out of that vehicle to search for marijuana.    That police officer began to conduct a records/computer check of the defendant and told other police officers who were present to begin removing the individuals from the BMW.

The other police officers told the rear seat passenger and then the front seat passenger to get out of the vehicle.    Both of those passengers complied.    Upon information and belief, as officers were detaining the front seat passenger, the defendant, without being told to get out of the car, voluntarily opened the driver's side door and got out of the BMW.    A police officer then told the defendant to go to the sidewalk.    When the defendant was near the front corner of the BMW, he began running down 17th Street, N.W., and onto Constitution Avenue, N.W., Washington, D.C. The police officer who had spoken to the defendant during the traffic stop and was conducting the records check of the defendant began to chase the defendant.    A description of the defendant and the direction he was running was broadcast during the chase.

---

check on a driver's license and registration because of the public interest of the States to ensure that only qualified persons are permitted to operate motor vehicles.   Delaware v. Prouse, 440 U.S. 648, 658 (1979); accord U.S. v. Hutchinson, 268 F.3d 1117, 1121 (D.C. Cir. 2001).   "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic]stop."   Rodriguez v. United States, 135 S.Ct. 1609, 1615 (2015) (citation omitted).   These inquiries typically include checking the driver's license, inspecting the registration for the vehicle, proof of insurance, and determining whether there are any outstanding warrants against the driver.   Id.   It is illegal in the District of Columbia to drive a motor vehicle on a suspended driver's license.   See 50 D.C. Code § 1403.01.

Another police officer arrived where the BMW was stopped to provide assistance.   That police officer used a flashlight and in plain view observed a magazine for a firearm in the pocket of the opened front passenger door of the BMW.   A crime scene technician arrived at the BMW and searched that vehicle.   The following items were recovered from the BMW:   (1) a Black Glock 27 .40 caliber Smith and Wesson semi-automatic pistol with a high capacity magazine that contained 20 .40 caliber cartridges from underneath the driver's side floor mat; (2) a magazine containing nine .40 caliber cartridges from the pocket of the front passenger door; (3) a grinder-type container with suspected Marijuana from the center console; and (4) approximately $4.00.

Following a search for the defendant, he was apprehended near the intersection of Maine Avenue and East Basin Drive, S.W., Washington, D.C.   The defendant was arrested.   Search incident to his arrest law enforcement recovered from the defendant's pocket approximately $2,684.00 in United States currency.   During an additional search of the defendant at a police district, law enforcement recovered from his person a folded dollar bill that contained a white crystal-like substance, which field-tested positive for methamphetamines, and approximately $205.00 in United States currency.[3]

According to the Maryland Motor Vehicle Administration Registration Certificate, the defendant does not own the BMW.   The registered owner is a female who was not present in the BMW during this incident.[4]

---

[3]    According to The Forensic Chemistry Unit Report of Examination, 0.069 net grams of N-Ethylpentylone and 2.646 net grams of Marijuana were recovered.

[4]    Upon information and belief, when the police officer approached the BMW and asked for the defendant's license and registration, in response to a question regarding who owned the car, the defendant said that he car belonged to his girlfriend.

## II.      The Defendant Does Not Have a Legitimate Expectation of Privacy in The BMW

The defendant moves to suppress all physical evidence recovered in this case, including evidence recovered from the search of the BMW, on the grounds that law enforcement conducted a warrantless search of the BMW in violation of the Fourth Amendment.    The defendant did not own the BMW and does not have a legitimate expectation of privacy in that vehicle.    Therefore, he does not have a basis to claim the protection of the Fourth Amendment and challenge the search of the BMW.

The BMW is registered to a female and not the defendant.    Therefore, he lacks a personal expectation of privacy in the BMW and is precluded from moving to suppress evidence recovered therefrom.    The defendant bears the burden of proving that he has a Fourth Amendment legitimate expectation of privacy in the BMW.  Framed more succinctly, the defendant must prove to the Court that he has a valid personal expectation of privacy in the BMW and that his expectation is reasonable.   To prevail on a Fourth Amendment claim, an individual must have a legitimate expectation of privacy in the area searched or the item seized.   Rawlings v. Kentucky, 448 U.S. 98, 106 (1980); accord United States v. Sheffield, 832 F.3d 296, 303-04 (D.C. Cir. 2016). Fourth Amendment rights are personal rights that cannot be vicariously asserted.   Alderman v. United States, 394 U.S. 165, 174 (1969).   To have standing to challenge a search, a person must demonstrate that he had a legitimate expectation of privacy in the premises searched or items seized, and that it is an invaded area that society is prepared to recognize as reasonable.   Rakas v. Illinois, 439 U.S. 128, 143 & n.12 (1978); accord Minnesota v. Carter, 525 U.S. 83, 88 (1998). For the objective prong, the inquiry is "whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable."   Bond v. United States, 529 U.S. 334, 338 (2000). With regard to the subjective prong, the inquiry is "whether the individual, by his conduct, has

exhibited an actual expectation of privacy: that is, whether he has shown that 'he [sought] to preserve [something] as private."   Id. (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)).

Here, the defendant lacks a legitimate expectation of privacy in the BMW and is precluded from moving to suppress any evidence recovered from that vehicle.   Therefore, the portion of his motion to suppress evidence recovered from BMW, specifically (1) the Black Glock 27 .40 caliber Smith and Wesson semi-automatic pistol with a high capacity magazine that contained 20 .40 caliber cartridges, (2) a magazine containing nine .40 caliber cartridges; (3) a grinder-type container with Marijuana; and (4) approximately $4.00, should be denied.

III.     **Probable Cause Existed to Conduct a Warrantless Search of The BMW**

Assuming for the purpose of argument, without conceding, that should the Court find that the defendant has standing to challenge the search of the BMW, that search was valid under the automobile exception to the warrant requirement.   United States v. Ross, 456 U.S. 798, 804-09 (1982) (warrantless search of an automobile is justified when police officers have probable cause to believe a vehicle contains contraband).   Probable cause to search an automobile exists where the facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.   Brinegar v. United States, 338 U.S. 160, 176 (1949).

The Fourth Amendment does not bar the police from stopping and questioning motorists when the police witness or suspect a violation of the traffic laws, even if the offense is a minor one.   Whren v. United States, 517 U.S. 806, 816 (1996); United States v. Mitchell, 951 F.2d 1291, 1295 (D.C. Cir. 1991), cert. denied, 504 U.S. 924 (1992).   Nor does the Fourth Amendment prohibit the police, during such a stop, from ordering the occupants to get out of the car as a matter of course pending completion of the stop.   Maryland v. Wilson, 519 U.S. 408, 415 (1997);

Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977) (officer can remove driver of a validly stopped vehicle); see also Brendlin v. California, 551 U.S. 249, 258 (2007) (during a lawful traffic stop passenger can be ordered out of the vehicle without reasonable suspicion that passenger poses safety risk); United States v. White, 648 F.2d 29, 36-37 (D.C. Cir.) (officers' orders to the occupants to get out of the car for questioning were compatible with an investigatory stop), cert. denied, 454 U.S. 924 (1981).   "The bright-line rule of Mimms means that 'a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle.'"   United States v. Bullock, Jr., 510 F.3d 342, 345 (D.C. Cir. 2007) (citations omitted), cert. denied, 553 U.S. 1024 (2008).

The probable cause requirement to justify a search for physical evidence has long been deemed a flexible, common-sense standard.   That standard "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false."   Texas v. Brown, 460 U.S. 730, 742 (1983) (internal citation and quotation marks omitted).   Under this standard, a "practical, nontechnical probability that incriminating evidence is involved is all that is required."  Id.

The probable cause inquiry is objective.   Whren, supra, 517 U.S. at 812-13 (noting that "[s]ubjective intentions play no role in ordinary, probable cause Fourth amendment analysis."). Thus, even if "the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action[,] [that] does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."   Scott v. United States, 436 U.S. 128, 138 (1978).

District of Columbia Municipal Regulations require that a vehicle operated on a highway

at any time from one-half hour after sunset to one-half hour before sunrise shall display lighted

lamps and illuminating devices.

> Each vehicle operated on a highway at any time from one-half (1/2)
> hour after sunset to one-half hour before sunrise, and at any other
> time when, due to insufficient light or unfavorable atmospheric
> conditions, persons and vehicles on the highway are not clearly
> discernible at a distance of five hundred feet (500 ft.) ahead shall
> display lighted lamps and illuminating devices as required in this
> chapter for different classes of vehicles, subject to exceptions with
> respect to parked vehicles.

D.C. Mun. Regs. Title 18, § 703.1 (2018).   On May 19, 2018, when the police officer observed

the BMW being operated at approximately 1:19 a.m. without headlights, that officer had probable

cause to believe that the defendant had committed the offense of driving without headlights.

Thus, police officer conducted a lawful stop of the BMW.   See United States v. Williams, 773

F.3d 98, 102 (D.C. Cir. 2014) (a police officer may constitutionally stop a vehicle if he has

probable cause to believe that the driver has committed a motor vehicle violation), cert. denied,

135 S.Ct. 2336 (2015).   During the traffic stop, police officers properly requested the front seat

passenger and rear seat passenger to get out of the BMW.   Upon information and belief, before

being told to get out of the BMW, the defendant, who was seated in the driver's seat, voluntarily

stepped out of that vehicle.   The front passenger door remained open after the front seat passenger

got out of the BMW.   Another police officer, who had arrived at the BMW to provide assistance,

used a flashlight and in plain view observed a magazine for a firearm in the pocket of the front

passenger door that was open.

The plain view doctrine permits the warrantless seizure of an object where the police officer

is lawfully positioned in a place from where the object can be plainly viewed, the incriminating

character of the object is immediately apparent, and the police officer has a lawful right of access

to the object itself.   Horton v. California, 496 U.S. 128, 136-37 (1990).   Mere observation of an item in plain view generally does not implicate the Fourth Amendment.   Brown, supra, 460 U.S. at 38 n.4.   Moreover, using a flashlight to illuminate the interior of a car is not a search under the Fourth Amendment.   Id. at 739-40; see also U.S. v. Lee, 274 U.S. 559, 563 (1927).   Additionally, changing one's position or bending over is not a search under the Fourth Amendment.   Brown, 460 U.S. at 740.

Here, a police officer who was lawfully standing on a public street and/or sidewalk used a flashlight to illuminate the pocket of the front passenger door that as open and observed in plain view a magazine for a firearm.   The use of the flashlight to illuminate the pocket of the front passenger door was not a search under the Fourth Amendment because it amounted to an observation.   Furthermore, based on the police officer's training and experience, he immediately knew the incriminating character of the magazine and that it was for a firearm.   The police officer then had probable cause to believe that evidence of firearm offenses could be found in the BMW. Therefore, the automobile exception to the Fourth Amendment permitted the search of the BMW. Maryland v. Dyson, 527 U.S. 465, 466-67 (1999) (warrantless search of a vehicle is permissible and does not violate the Fourth Amendment if the officer has probable cause to believe that the vehicle contains contraband); accord California v. Acevedo, 500 U.S. 565, 580 (1991); Ross, supra, 456 U.S. at 798, 807-09.

Viewed objectively, these facts amounted to a "fair probability" that the BMW harbored a firearm, ammunition and possibly other contraband.   Illinois v. Gates, 462 U.S. 213, 246 (1983). Automobile searches based on considerably less have been upheld.   See United States v. Brown, 374 F.3d 1326 (D.C. Cir. 2004) (fraudulent driver's license and credit card in car gave police probable cause for car search), cert. denied, 543 U.S. 1174 (2005); Sheffield, supra, 832 F.3d at

305 (smell of Marijuana constitutes probable cause to search vehicle); <u>U.S. v. Jackson</u>, 167 Fed.Appx. 812, 813 (D.C. Cir. 2005) (same); <u>U.S. v. Turner</u>, 119 F.3d 18, 20 (D.C. Cir. 1997) (smell of marijuana and small amount of it in passenger compartment were sufficient "to establish a 'fair probability' that Turner might have hidden additional drugs . . . in areas out of plain sight"; thus, trunk search was reasonable).   Furthermore, there is no constitutional distinction between "worthy" and "unworthy" containers.   <u>Ross</u>, 456 U.S. at 822, 825 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

Finally, police officers may conduct a warrantless search of person incident to a lawful custodial arrest.   <u>United States v. Robinson</u>, 414 U.S. 218, 245 (1973).   Search incident to the defendant's lawful arrest, law enforcement's recovery of approximately $2,889.00 and 0.069 net grams of N-Ethylpentylone from the defendant's person was pursuant to a valid warrantless search.

The defendant's argument that the officer who conducted the traffic stop and spoke with the defendant intended to search the vehicle for more marijuana, which now can be the only basis for the search, is without merit.   Simply put, that officer's subjective belief is irrelevant.   The relevant inquiry is whether there was an objectively legal basis for the search of the BMW.   <u>See</u> <u>Whren</u>, <u>supra</u>, 517 U.S. at 812-13 (subjective intentions play no role in a probable cause Fourth Amendment analysis); <u>Brown</u>, <u>supra</u>, 374 F.3d at 1328 ("a search may be upheld even if the officer never considered whether he had probable cause to conduct the search.").[5]

---

[5]     The defendant improperly relies upon District of Columbia law, specifically 48 D.C. Code § 921.02a, to argue that the search of the BMW was illegal because the odor of marijuana and the possession of marijuana without evidence that the quantity exceeded one ounce cannot constitute reasonable articulable suspicion of a crime.   The legislative history for the District of Columbia's Marijuana law that was enacted in 2014 expressly states:

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472-845

_____/s/_____
Karla-Dee Clark
D.C. Bar No. 435-78
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7740
Karla-dee.clark@usdoj.gov

---

Nothing in this Bill will have an impact on the ability of federal law enforcement to enforce federal law throughout the District.   While this bill will greatly limit the risk of arrest for possession of one ounce or less of marijuana, there is still a risk of arrest – by federal law enforcement – assumed by anyone choosing to possess it.

Counsel of the District of Columbia, Committee on the Judiciary and Public Safety Committee Report, Report on Bill 20-409, Marijuana Possession Decriminalization Amendment Act of 2014 at 6 n.33 (January 15, 2014).   Pursuant to federal law, it remains illegal to possess Marijuana.   21 U.S.C. § 844.   See also Virginia v. Moore, 553 U.S. 164, 176, 178 (2008) ("warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment protections" and "[i]t is not the province of the Fourth Amendment to enforce state law.   That Amendment does not require the exclusion of evidence obtained from a constitutionally permissible arrest.)

10